UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| UNITED STATES OF AMERICA | No. C 13-01870 LB |
|---|---|
| Plaintiff, v. | **ORDER GRANTING UNITED STATES OF AMERICA'S MOTION FOR DEFAULT JUDGMENT** |
| APPROXIMATELY $64,950.00 IN UNITED STATES CURRENCY, | [ECF No. 20] |
| Defendant. | |

## INTRODUCTION

This is a judicial forfeiture action brought under 21 U.S.C. § 881(a)(6) involving the seizure of Defendant $64,950 in United States currency. The clerk entered default, and the United States now brings a Motion for Default Judgment ("Motion"), ECF No. 20.[1] A hearing on the Motion was held on December 19, 2013. For the reasons stated below, and good cause appearing, the motion is GRANTED.[2]

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page numbers at the top of the document.

[2] The United States has consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 686(c). *See* ECF No. 7. No other party appeared. In an *in rem* forfeiture proceeding, a party that fails to comply with the applicable filing requirements is precluded from standing as a "party" to the action, making it unnecessary to obtain the individual's consent to proceed before a magistrate judge. *United States v. 5145 N. Golden State Blvd.*, 135 F.3d 1312, 1317 (9th Cir.1998).

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

**STATEMENT**

**I. FACTUAL ALLEGATIONS[3]**

On September 7, 2012, at approximately 2:44 a.m., Stephen Srichinda purchased a one-way United Airlines ticket from Chicago, Illinois to San Francisco, California. Srichinda was scheduled to depart Chicago, O'Hare Airport on flight #769 at 10:03 a.m. and arrive in San Francisco at approximately 1:00 p.m. Srichinda paid $500.80 for the one-way ticket with a credit card. Srichinda checked one piece of luggage.

At approximately 10:20 a.m., Drug Enforcement Administration ("DEA") Task Force Agents were contacted regarding Srichinda's suspicious travel activity. A criminal records search revealed that Srichinda had been convicted of Possession of a Controlled Substance in 2003, and was sentenced to two years probation. Agents also obtained a photocopy of Srichinda's driver's license photograph.

At approximately 12:40 p.m., agents initiated surveillance at the San Francisco International Airport ("SFO") in the area of Gate 72. At approximately 1:06 p.m., agents observed Srichinda exit the jet way of Gate 72, carrying a black Gucci backpack. Agents followed Srichinda towards United Airlines baggage carousel #5. Agents observed Srichinda make several calls from his cellular telephone while waiting for his checked luggage. At approximately 1:15 p.m., agents observed Srichinda retrieve a black roll type suitcase from the baggage carousel.

Shortly thereafter, agents made contact with Srichinda. The agents identified themselves and advised Srichinda that he was not under arrest and was free to go. Agents asked Srichinda if they could talk to him for a moment, and Srichinda immediately stated, "Yes".

Srichinda told agents he was in the San Francisco area for pleasure and was going to visit a friend named Lyles. When asked if he had ever been arrested before, Srichinda stated, "A long time ago." Srichinda admitted that he did not have a return ticket to Chicago and planned on staying in San Francisco for a couple of days at the Clift Hotel. He admitted that he did not have hotel

---

Therefore, the undersigned magistrate judge may enter judgment in this case.

[3] The following factual allegations are taken from Plaintiff's complaint, ECF No. 1, ¶¶ 7-20.

C 13-01870 LB
ORDER  2

reservations. Srichinda denied currently possessing illegal narcotics or large sums of money. He also stated that he owned a car wash and a debt recovery business.

When Agents asked for consent to search his black backpack and his black suitcase, Srichinda immediately stated "Ok". Srichinda then paused and asked, "Can I call my attorney first." After speaking with his attorney, Srichinda stated that he would not consent to a search of his property.

At approximately 1:30 p.m., agents advised Srichinda that he was free to go, but that his backpack and suitcase were going to be detained pending further investigation. Agents advised that a certified narcotic canine was going to search the bags, and if the canine alerted to the odor of narcotics agents would attempt to obtain a search warrant to search the items. Srichinda stated "OK", and was given a receipt for the items. At approximately 1:40 p.m., Srichinda left the airport.

At approximately 1:45 p.m., agents placed Srichinda's backpack and suitcase in the kitchen area of an office at the San Francisco Airport. A narcotic canine conducted a systematic search of the area and immediately alerted to the backpack and suitcase by biting and scratching at both items. Agents maintained custody of the items while preparing a state search warrant.

At approximately 3:20 p.m., agents obtained a search warrant from Honorable Donald Ayoob of the San Mateo Superior Court authorizing the search of Srichinda's backpack and suitcase. At approximately 3:30 p.m., agents executed the search warrant on Srichinda's backpack and suitcase. The United States attached a photograph of Srichinda's backpack and suitcase as Exhibit A to the complaint.

A search of Srichinda' s backpack revealed two bundles of United States Currency. A photograph of these two bundles is attached as Exhibit B to the complaint. A search of Srichinda's suitcase revealed one additional bundle of rubber-banded currency. A photograph of this bundle is attached to the complaint as Exhibit C. Further examination of the suitcase revealed a plastic zip lock bag taped to the interior lining of the suitcase, containing nine additional bundles of currency. A photograph of this bag is attached to the complaint as Exhibit D.

Agents located a total of $65,000. *See* Complaint Ex. E (photograph depicting bundles of currency. During the processing of the money, one counterfeit $50 bill was located by bank personnel.

1   On September 10, 2012, agents made arrangements with Srichinda to meet him at SFO to return
2   his belongings. At approximately 5:40 p.m., agents met with Srichinda and returned his backpack,
3   suitcase and its contents. Agents asked Srichinda how much money he had in his backpack and
4   suitcase and Srichinda replied, "65,000." Srichinda stated that the money was from the recent sale
5   of his vehicle in Illinois. He refused to provide details regarding the sale of the vehicle. Srichinda
6   stated that he was going to loan the money to a friend who works in product development for
7   Nissan. Srichinda refused to identify his friend.

## II. PROCEDURAL HISTORY AND NOTICE

The United States filed this action on April 24, 2013. On April 25, 2013, the United States gave notice of this action directly to Srichinda by serving a copy of the Complaint for Forfeiture, the Notice of Forfeiture Action, the Warrant of Arrest of Property *In Rem,* and related documents, via both certified and regular U.S. mail to Srichinda's two last known addresses. *See* Certificate of Service, ECF No. 5; *see also* Public Notice of Forfeiture Action, ECF No. 4; Warrant of Arrest of Property *In Rem*, ECF No. 3. The United States also published notice of this forfeiture action on an official government website (www.forfeiture.gov) for at least 30 consecutive days, beginning on July 9, 2013.[4] *See* Declaration of Publication, ECF No. 11.

No one appeared to file a verified claim to Defendant $64,950 or otherwise responded to this action. *See* Hopkins Decl., ECF No. 13, ¶ 4; *see generally* Docket. On July 25, 2013, the government filed a status conference statement about the case and served a copy on Mr. Srichinda by first-class mail. *See* ECF No. 9 at 1, 5. On October 1, 2013, the government requested entry of default, served Mr. Srichinda with the request and supporting declaration and all filed documents relating to the case including the complaint, the in rem warrant, the notice of forfeiture action, the undersigned's standing order, the notice of assignment to the undersigned, the ECF registration handout, and the dispute resolution procedures handout. *See* ECF Nos. 12, 13, 13-2, and 15. The

---

[4] The United States explains that it "inadvertently neglected to publish notice of this forfeiture action on an official government website at the time that notice was served on the claimant," but explains that it published notice from July 9, 2013 to August 7, 2013. *See* Hopkins Decl., ECF No. 13, ¶ 4.

government filed another status report on October 2, 2013 and again served Mr. Srichinda. *See* ECF Nos. 14-15. The clerk entered default on October 7, 2013. *See* ECF No. 18.

On October 7, 2013, the government served Mr. Srichinda with the clerk's entry of default. *See* ECF No. 19. On October 4, 2013, the government filed its motion for default judgment and noticed it for December 19, 2013. *See* ECF No. 20. It served Mr. Srichinda on November 4, 2013. The court held a hearing on December 19, 2013, and no one appeared to contest the government's motion.

## ANALYSIS

### I. JURISDICTION

The court has jurisdiction over this matter under 28 U.S.C. §§ 1345 and 1355(a), which vests district courts with original jurisdiction in "any action or proceeding for the . . . enforcement of any . . . forfeiture . . . incurred under any Act of Congress." *See* 28 U.S.C. § 1355(a).

### II. LEGAL STANDARD

#### A. Forfeiture

The United States filed this action under 21 U.S.C. § 881(a)(6), which provides, in relevant part, that property "subject to forfeiture" includes "[a]ll moneys . . . intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter[.]" 21 U.S.C. § 881(a)(6). *See* Complaint at 4-5. Forfeiture is "harsh and oppressive" and thus, is "not favored by the courts." *See U.S. v. $191,910.00 in U.S. Currency*, 16 F.3d 1051, 1069 (9th Cir. 1994). The Ninth Circuit is "particularly wary of civil forfeiture statutes" because they "impose 'quasi-criminal' penalties" but do not provide property owners with the degree of procedural protections provided to criminal defendants. *See id.* at 1068; *U.S. v. Marlof,* 173 F.3d 1213, 1217 (9th Cir. 1999) (quoting *$191,000.00 in U.S. Currency,* 16 F.3d at 1068)). Accordingly, strict adherence to procedural rules is paramount in civil forfeiture proceedings. *See Marlof,* 173 F.3d at 1217 (denying forfeiture where government "erred" by failing to provide due notice to property owner); *$191,910.00 in U.S. Currency,* 16 F.3d at 1068-69 (strictly construing currency forfeiture provisions of 19 U.S.C. § 615 against government and holding that "the burden on the government

to adhere to procedural rules should be heavier than on claimants").

### B. Default Judgment

Under Federal Rule of Civil Procedure 55(b)(2), a plaintiff may apply to the district court for – and the court may grant – a default judgment against a defendant who has failed to plead or otherwise defend an action. *Draper v. Coombs*, 792 F.2d 915, 925 (9th Cir. 1986). Whether to enter a judgment lies within the court's discretion. *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002). Still, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *Draper* 792 F.2d at 924-25. Default judgments generally are disfavored because "cases should be decided on their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). Where the clerk has already entered default, the court must take as true the factual allegations of the complaint and other competent evidence submitted. *See Fair Hous. Of Marin v. Coombs*, 285 F.3d 899, 906 (9th Cir. 2002); *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987).

In deciding whether to enter a default judgment, the court should consider: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute about the material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel*, 782 F.2d at 1471-72.

### III. WHETHER DEFAULT JUDGMENT IS APPROPRIATE

In the present matter, the clerk entered default on October 7, 2013. *See* ECF No. 18. Consequently, the factual allegations of the Government's complaint are deemed to be true and the court is vested with the authority to enter default judgment. The decision whether to exercise its discretion to do so is guided by two overlapping inquiries. First, the court considers the Government's claims in light of the factors set forth by the Ninth Circuit in *Eitel,* 782 F.2d at 1471–72. Second, the court determines whether the Government has met the specific procedural requirements governing forfeiture actions.

### A. *Eitel* Factors

The first *Eitel* factor supports granting default judgment because denying the motion would likely prejudice the United States by leaving it without a remedy. The second and third factors also support granting default judgment, as the United States' allegations, assumed to be true, show that the defendant funds are subject to forfeiture under 18 U.S.C. § 881(a)(6), as the funds were related to drug trafficking. The sum of money at stake ($64,950), though substantial, is not so large as to warrant denial of the motion. As discussed in the procedural history and below, Srichinda was properly served with the Complaint, Arrest Warrant and Notice of Forfeiture Action, and he was served with notice of the proceedings, so there is no indication of a possible dispute concerning material facts or that the default was due to excusable neglect. Finally, although there is a strong public policy favoring a decision on the merits, no party has filed a verified claim for the defendant funds, and thus deciding the case on the merits is not possible. Therefore, the consideration of the *Eitel* factors as a whole weighs in favor of granting the Motion for Default Judgment.

### B. Compliance with Forfeiture Procedures

The Supplemental Rules for Certain Admiralty and Maritime Claims ("Supplemental Rules") govern judicial forfeitures of property. *United States v. 5145 N. Golden State Blvd.,* 135 F.3d 1312, 1315 (9th Cir. 1998). Under the Admiralty and Maritime Local Rule 6-1(a) for the Northern District of California, "[a] party seeking a default judgment in an action *in rem* must show that due notice of the action and arrest of the property has been given . . . [t]hrough execution of process in accordance with Fed. R. Civ. P. Supp. G(3); and . . . in accordance with Fed. R. Civ. P. Supp. G(4)." Admir. L.R. 6–1(a).

#### *1. Supplemental Rule G(3)*

Supplemental Rule G(3) governs judicial authorization and process. Supplemental Rule G(3) provides that "the clerk must issue a warrant to arrest the property if it is in the government's possession, custody, or control." Fed. R. Civ. P. Supp. G(3)(b)(i). In this case, a Warrant of Arrest of Property *In Rem* was issued on April 24, 2013. *See* ECF No. 3.

Supplemental Rule G(3) also states that "[t]he warrant and any supplemental process must be delivered to a person or organization authorized to execute it," including "someone under contract

with the United States." The certificate of service states that Alicia Chin, a paralegal in the Asset Forfeiture Unit of the United States Attorney for the Northern District of California, served the relevant documents in this case via United States certified mail and regular U.S. mail upon Srichinda's last known addresses. *See* Certificate of Service, ECF No. 5. Based on the foregoing, service was in compliance with Supplemental Rule G(3).

### *2. Supplemental Rule G(4)*

Supplemental Rule G(4) requires both notice by publication and notice to known potential claimants. *See* Fed. R. Civ. P. Supp. G(4)(a)-(b). First, with respect to notice by publication, Rule G(4)(a) provides that "[a] judgment of forfeiture may be entered only if the government has published notice of the action within a reasonable time after filing the complaint or at a time the court orders," and requires that a published notice: "(A) describe the property with reasonable particularity; (B) state the times under Rule G(5) to file a claim and to answer; and (C) name the government attorney to be served with the claim and answer." Fed. R. Civ. P. G(4)(a)(i)-(ii). Rule G(4) further provides the notice may be published by "posting a notice on an official internet government forfeiture site for at least 30 consecutive days." Fed. R. Civ. P. Supp. G(4)(a)(iv).

To demonstrate compliance with the published notice requirement, the United States has filed a "Declaration of Publication" that states the United States published notice of the action on an official government website (www.forfeiture.gov), where it remained for at least 30 consecutive days beginning April 10, 2013. *See* ECF. No. 8. The published notice described the property to be seized as "$64,950.00 U.S. Currency (12-DEA-571434) which was seized from Stephen Srichinda on September 07, 2012 at San Francisco International Airport, located in San Francisco, CA." *Id.* The published notice also noted that "[a]ny person claiming a legal interest in the Defendant Property must file a verified Claim with the court within 60 days from the first date of publication (July 09, 2013)," and named Assistant United States Attorney Kimberly E. Hopkins as the government attorney to be served. This notice complies with the requirements of Supplemental Rule G(4)(a).

Next, with respect to notice to known potential claimants, Rule (G)(4)(b) requires the government to "send notice of the action and a copy of the complaint to any person who reasonably appears to be a potential claimant." Fed. R. Civ. P. Supp. G(4)(b)(i). The notice must state "(A) the

date when the notice is sent; (B) a deadline for filing a claim, at least 35 days after the notice is sent; (C) that an answer or a motion under Rule 12 must be filed no later than 21 days after filing the claim; and (D) the name of the government attorney to be served with the claim and answer." *Id.* at G(4)(b)(ii).

The Notice of Forfeiture was served on Srichinda with the Complaint and Arrest Warrant. *See* ECF No. 5. The Notice of Forfeiture: (A) is dated April 24, 2013 and was served on April 25, 2013; (B) states that the deadline for filing a claim is at least thirty-five days after the notice is sent; (C) states that an answer to the complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure must be filed within 21 days after filing a claim; and (D) identifies Assistant United States Attorney Kimberly E. Hopkins as the government attorney to be served. Therefore, the United States has demonstrated compliance with the requirements of Supplemental Rule G(4)(b).

Accordingly, notice by publication and notice to known compliance with Supplemental Rule G(4).

## CONCLUSION

For the reasons stated above, the United States' Motion for Default Judgment is **GRANTED**. This disposes of ECF No. 20.

**IT IS SO ORDERED.**

Dated: December 19, 2013

_____
LAUREL BEELER
United States Magistrate Judge